**FILED**
**Mar 19, 2019**
**12:37 PM(ET)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT CHATTANOOGA

| | | |
|---|---|---|
| Nathalie Bridges,<br>　　　　Employee, | ) | Docket No.: 2018-01-0771 |
| v. | ) | State File No.: 13588-2018 |
| Lowe's Home Center, Inc.,<br>　　　Self-Insured Employer. | ) | Judge Audrey Headrick |

## EXPEDITED HEARING ORDER
### *(DECISION ON THE RECORD)*

This matter came before the Court on Nathalie Bridges's Request for an Expedited Hearing on the record.[1] The issue is whether Ms. Bridges is likely to establish at trial that she is entitled to medical and temporary disability benefits for a left-ankle/foot injury. Lowe's disputes her entitlement to benefits, asserting that intervening falls caused the need for further treatment. For the reasons below, the Court holds Ms. Bridges is entitled to the requested benefits.

### History of Claim

While working at Lowe's on February 8, 2018, a co-worker pushed a table into Ms. Bridges's left ankle. Lowe's authorized treatment with a provider who diagnosed an avulsion fracture and prescribed an open-toed boot. Lowe's provided a panel, and Ms. Bridges selected orthopedist Dr. Carl Osborn.

Dr. Osborn initially took Ms. Bridges off work. While keeping her in the boot, Dr. Osborn also suggested she attempt to wear close-toed shoes. Dr. Osborn's records reflect Ms. Bridges told him that Lowe's required her to wear close-toed shoes at work. Lowe's paid her temporary disability benefits at the weekly rate of $216.96.

---

[1] The Court issued a docketing notice allowing the parties until March 14 to file objections or submit position statements. Lowe's did not request an evidentiary hearing, and the Court determined it needed no additional evidence to decide the issue.

Dr. Osborn's records discuss Ms. Bridges's efforts to wean from the boot. At her April 2 visit, she reported that she "[w]as doing well until she was trying to wean away from the boot and had slipped and twisted her ankle again, which re-aggravated the previous complaints." Dr. Osborn cautioned Ms. Bridges "on going without the [boot]" but noted she could begin wearing an ankle support, which fit inside her shoe. By April 30, he released her to work with restrictions.

Ms. Bridges's efforts to return to work were unsuccessful. After two weeks, she returned to Dr. Osborn wearing her boot and complaining of increased pain due to working long hours on her feet. He took her off work and ordered an MRI. Despite normal MRI findings, Dr. Osborn diagnosed possible sinus tarsi syndrome based on continued pain and tenderness.

In June, Lowe's sent Ms. Bridges to orthopedist Dr. Thomas Koenig for an independent medical evaluation (IME). Dr. Koenig reviewed some, but not all, of Dr. Osborn's records and provided the following diagnoses attributable to the February 8 injury: (1) contusion with superficial laceration; and (2) neuropraxia of multiple superficial sensory nerves. He found Ms. Bridges was not at maximum medical improvement (MMI); suggested restrictions, including wearing the boot; and, recommended conservative treatment.

When Ms. Bridges next saw Dr. Osborn on July 9, he recommended surgery for sinus tarsi syndrome. Lowe's immediately consulted Dr. Koenig, who denied the reasonableness and necessity of the recommended surgery. He based this opinion on the lack of a diagnostic injection of lidocaine/Depo-Medrol in the sinus tarsi to validate her clinical findings.

The next day, Ms. Bridges slipped while wearing her boot on a wet floor and caught herself on a railing. She sought emergency treatment for severe back and bilateral-ankle pain. After taking x-rays, the emergency provider diagnosed her with low-back pain and ankle sprains. On the same day, Lowe's stopped Ms. Bridges's temporary disability benefits, with the exception of $61.99 for July 17 and 18, and also ended all medical treatment.[2]

Shortly after her fall, Ms. Bridges returned to Dr. Osborn on her own. She disclosed her fall and resulting back, hip, and bilateral-ankle pain and stated her primary complaint was back pain. Dr. Osborn recommended a second opinion by his associate, Dr. Eric Clarke, after noting Ms. Bridges continued to wear the boot due to sinus tarsi pain.

---

[2] Lowe's denied the claim without filing either a Notice of Controversy or Notice of Denial. *See* Affidavit of Nathalie Bridges.

Dr. Clarke noted that Ms. Bridges's recent fall "is not related to her left foot pain which she had prior." He also agreed with Dr. Osborn's diagnosis of left-ankle sinus tarsi syndrome and the surgery recommendation.

Dr. Osborn completed a Form C-32 Standard Form Medical Report with attached correspondence. He described Ms. Bridges's February 8 left-ankle injury as a ligament sprain and sinus tarsi syndrome. Dr. Osborn indicated the February 8 incident was "more likely than not, primarily responsible for the injury or primarily responsible for the need for treatment." Dr. Osborn stated the recommended surgery is reasonable and medically necessary, and he kept Ms. Bridges off work until after surgery. He provided his opinions after reviewing the July 10 hospital record and Dr. Koenig's IME and addendum.

Ms. Bridges asked the Court to order Lowe's to authorize the recommended surgery, reinstate her temporary disability benefits, assess a 25% penalty for non-payment of temporary disability benefits, and pay attorney fees for its wrongful denial of the claim. Although Lowe's did not file a response, the Dispute Certification Notice (DCN) states that it contended that the recommended medical treatment is not related to the February 8 injury due to "intervening falls."

## Findings of Fact and Conclusions of Law

### Standard Applied

To prevail at an expedited hearing, Ms. Bridges must provide sufficient evidence to show she would likely to prevail at a hearing on the merits in proving her claim for medical and temporary disability benefits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2018). The Court holds she met this burden.

### Medical Benefits

To receive medical benefits, Ms. Bridges must show, to a reasonable degree of medical certainty, that the February 8, 2018 incident "contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." As the panel physician, the law presumes Dr. Osborn's opinion regarding causation to be correct unless rebutted by a preponderance of the evidence. Tenn. Code Ann. § 50-6-102(14).

Dr. Osborn concluded that Ms. Bridges's left-ankle condition and need for treatment arose primarily from the February 8 incident at Lowe's. He reached this conclusion even after knowing of her July 10 fall and reviewing the medical records from that fall as well as Dr. Koenig's IME and addendum.

3

Dr. Koenig's opinion suggested that Dr. Osborn should provide additional conservative/diagnostic treatment before surgery. He did not contradict Dr. Osborn's opinion that Ms. Bridges's work-related injuries required additional medical treatment, including surgery. Although Dr. Koenig disagreed with Dr. Osborn's surgical recommendation, he provided work-related diagnoses, stated she was not at MMI, suggested restrictions, and recommended further treatment. Given these facts, the Court accepts the opinion of Dr. Osborn and holds Ms. Bridges is likely to prevail at a hearing that she is entitled to additional medical treatment, including surgery, for her left ankle.

*Temporary Disability Benefits*

Ms. Bridges also requested temporary disability benefits. To receive temporary total disability benefits, she must prove (1) she became disabled from working due to a compensable injury; (2) a causal connection exists between the injury and her inability to work; and (3) she established the duration of her disability. *Jones v. Crencor Leasing and Sales*, TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015). Concerning temporary partial disability benefits, Ms. Bridges is eligible for benefits if she earned less than her average weekly wage due to work restrictions. *See* Tenn. Code Ann. § 50-6-207(2)(A).

Dr. Osborn kept Ms. Bridges off work until after she undergoes surgery. While Dr. Koenig did not recommend that she stay completely off work, he suggested restricted duty wearing her open-toed boot. Lowe's did not dispute Ms. Bridges's assertion that it prohibits employees from wearing open-toed shoes. Therefore, whether classified as temporary total or temporary partial disability, Ms. Bridges is entitled to weekly benefits from July 10, 2018, forward.

*Penalty Unit Referral*

The Penalty Program is specifically authorized to assess penalties under the Workers' Compensation Law as well as the General Rules of the Workers' Compensation Program. The Court finds that Lowe's is subject to possible penalty assessments under Tennessee Code Annotated section 501-6-118 for the following:

- Lowe's bad-faith denial of Ms. Bridges's claim without supporting medical proof;
- Lowe's failure to file either a Notice of Controversy or Notice of Denial of Claim when it stopped Ms. Bridges's medical treatment and temporary disability benefits;
- Lowe's failure to timely provide treatment recommended by Dr. Osborn, the authorized physician; and,
- Lowe's wrongful failure to pay Ms. Bridges's temporary disability benefits despite Dr. Osborn and Dr. Koenig both indicating that she

4

remained off work and/or on restricted duty while wearing an open-toed boot.

Therefore, the Court refers this matter to the Compliance Program for consideration of penalties.

*Non-Payment or Late Payment of Temporary Disability Benefits*

Ms. Bridges requested that the Court assess a twenty-five percent penalty for Lowe's non-payment of temporary disability benefits. Tennessee Code Annotated section 50-6-205(b)(3) authorizes a workers' compensation judge to assess a twenty-five-percent penalty when "an employer, trust or pool or an employer's insurer fails to pay, or untimely pays, temporary disability benefits within twenty (20) days after the employer has knowledge of any disability that would qualify for benefits under this chapter." However, this section also provides Lowe's the opportunity to argue why the Court should not issue a penalty. Therefore, **Lowe's shall respond on or before Thursday, March 28, 2019, stating why the Court should not assess this civil penalty for nonpayment of past-due temporary disability benefits.**

*Attorney's Fees*

Ms. Bridges also requested that the Court award her attorney's fees and costs. Tennessee Code Annotated section 50-6-226(d)(1)(B) authorizes the Court to award fees and costs under the following circumstances when an employer:

> Wrongfully denies a claim or wrongfully fails to timely initiate any of the benefits to which the employee or dependent is entitled . . . if the workers' compensation judge makes a finding that the benefits were owed at an expedited hearing or compensation hearing. For purposes of this subdivision (d)(1)(B), "wrongfully" means erroneous, incorrect, or otherwise inconsistent with the law or facts.

The Workers' Compensation Appeals Board previously stated that the court must consider the employer's denial decision "at the time the denial decision was made" as well as "additional information or subsequent events that bear on the denial decision." *Andrews v. Yates Service, LLC,* 2018 TN Wrk. Comp. App. Bd. LEXIS 22, at *13 (May 8, 2018). For the reasons below, the Court concludes Lowe's wrongfully denied Ms. Bridges's claim.

The Court finds that the circumstances of Lowe's handling of this claim justify awarding attorney's fees and costs at this interlocutory stage. First, the DCN indicates that Lowe's denied Ms. Bridges's claim due to "intervening falls." With no apparent investigation or contrary medical proof, Lowe's denied the claim despite the presumption of correctness afforded Dr. Osborn regarding causation. Second, Lowe's maintained its

5

denial even though its own IME physician, Dr. Koenig, causally related her left-foot diagnoses to the February 8 injury and recommended additional treatment. Third, Lowe's stopped Ms. Bridges's temporary disability benefits despite Dr. Osborn taking her completely off work and Dr. Koenig placing her on restricted duty with use of her boot. Finally, Lowe's denied the claim based on its own assumption, unsupported by any medical proof, that her July 10 fall broke the chain of causation. Regardless of the ultimate resolution of this claim, those facts will not change, so this case falls within the limited circumstances supporting an award of fees and cost at the interlocutory stage. *See Travis v. Carter Express, Inc.,* 2018 TN Wrk. Comp. App. Bd. LEXIS 67, at \*25 (Dec. 21, 2018). Therefore, the Court awards reasonable attorney fees and costs to Ms. Bridges.

**IT IS, THEREFORE, ORDERED** as follows:

1. Lowe's shall pay past-due temporary total disability benefits at the weekly compensation rate of $216.96 in the lump-sum amount of $7,841.55 for the period from July 10, 2018, to March 19, 2019.

2. Lowe's shall continue to pay to Ms. Bridges temporary disability benefits in regular intervals until she is no longer eligible for those benefits by reaching MMI, by returning to work at a wage equal to or greater her average weekly wage, or by release without restrictions by Dr. Osborn. Lowe's representative shall immediately notify the Bureau, Ms. Bridges, and Ms. Bridges's counsel, of the intent to terminate temporary disability benefits by filing Form C-26, citing the basis for the termination.

3. Lowe's shall provide Ms. Bridges additional medical treatment, including surgery as recommended by Dr. Osborn, for her left-ankle/foot injury under Tennessee Code Annotated section 50-6-204.

4. Under Tennessee Code Annotated section 50-6-226(d)(1)(B), the Court awards reasonable attorney fees and costs incurred by Attorney Jay Kohlbusch. Mr. Kohlbusch shall file a supporting affidavit of his time and any expenses with the Clerk.

5. This matter is set for a Status Hearing on Friday, May 31, 2019, at 10:00 a.m. Eastern Time. You must call 423-634-0164 or toll-free at 855-383-0001 to participate. Failure to call may result in a determination of the issues without your participation.

6. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry

of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

7. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov.

**ENTERED March 19, 2019.**


**AUDREY A. HEADRICK**
**Workers' Compensation Judge**

7

# APPENDIX

Exhibits:

1. Affidavit of Nathalie Bridges
   a. February 21, 2018 Starr Regional Medical Center record
   b. Medical records of Dr. Carl Osborn
   c. Dr. Thomas Koenig's June 6, 2018 Independent Medical Evaluation
   d. Dr. Koenig's IME addendum
   e. July 10, 2018 Starr Regional Medical Center record
   f. Second opinion of Dr. Eric Clark
   g. September 11, 2018 correspondence of Attorney Jay Kohlbusch to Sedgwick CMS claims representative, Terrence Woodley
   h. September 18, 2018 correspondence of Mr. Woodley to Mr. Kohlbusch
   i. Dr. Osborn's Form C-32
2. Affidavit of Mr. Kohlbusch

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Exhibit List
5. Docketing Notice
6. Employee's Position Statement

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Expedited Hearing Order was sent to the following recipients by the following methods of service on March 19, 2019.

| Name | Certified Mail | Email | Service sent to: |
|---|---|---|---|
| Jay Kohlbusch, Employee's Attorney | | X | kohlbuschlaw@hotmail.com |
| Chris Brown, Employer's Attorney | | X | chris.brown@leitnerfirm.com |
| Compliance Program | | X | WCCompliance.program@tn.gov |

**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov

9



Expedited Hearing Order Right to Appeal:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# EXPEDITED HEARING NOTICE OF APPEAL

Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

Docket #: _____

State File #/YR: _____


**Employee**

v.

**Employer**

## Notice

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____ to the Workers' Compensation Appeals

Board. [List the date(s) the order(s) was filed in the court clerk's office]


**Judge**_____

## Statement of the Issues

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____


## Additional Information
**Type of Case** [Check the most appropriate item]

☐  Temporary disability benefits
☐  Medical benefits for current injury
☐  Medical benefits under prior order issued by the Court

## List of Parties
**Appellant (Requesting Party):**_____ At Hearing: ☐Employer ☐Employee

Address:_____

Party's Phone:_____ Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code:_____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name:_____ SF#:_____ DOI:_____

## Appellee(s)

**Appellee (Opposing Party):**_____ At Hearing: ☐Employer ☐Employee

Appellee's Address:_____

Appellee's Phone:_____ Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email:_____

*** Attach an additional sheet for each additional Appellee ***

## CERTIFICATE OF SERVICE

I,_____, certify that I have forwarded a true and exact copy of this Expedited Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules of Board of Workers' Compensation Appeals on this the_____day of_____, 20___

[Signature of appellant or attorney for appellant]    _____



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____    2. Address: _____

3. Telephone Number: _____    4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning _____ |
| SSI | $ _____ per month | beginning _____ |
| Retirement | $ _____ per month | beginning _____ |
| Disability | $ _____ per month | beginning _____ |
| Unemployment | $ _____ per month | beginning _____ |
| Worker's Comp. | $ _____ per month | beginning _____ |
| Other | $ _____ per month | beginning _____ |

9. My expenses are:

Rent/House Payment $_____ per month     Medical/Dental  $_____ per month

    Groceries        $_____ per month       Telephone     $_____ per month

    Electricity       $_____ per month       School Supplies $_____ per month

    Water          $_____ per month       Clothing      $_____ per month

    Gas            $_____ per month       Child Care    $_____ per month

    Transportation $_____ per month       Child Support $_____ per month

    Car           $_____ per month

    Other         $_____ per month (describe: _____ )

10. Assets:

    Automobile         $_____       (FMV) _____

    Checking/Savings Acct. $_____

    House            $_____       (FMV) _____

    Other            $_____       Describe: _____

11. My debts are:

| Amount Owed | To Whom |
| --- | --- |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____

APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____

NOTARY PUBLIC

My Commission Expires:_____